Mr. Wheaton. May it please the Court, At the outset, although this is a third-party uses case, it's important to remember what the ultimate question is. That is, is there a probability of confusion? A possibility of confusion is not enough. A speculative assumption there might be confusion is not enough. This Court requires that there be a probability of confusion, and the PTO bears the burden of proof on that question. What is the standard of review that you would apply to that question? It's a question of law. Unlikelihood of confusion is a question of law. The underlying factual determinations would be subject to the substantial evidence burden, but the ultimate question whether there's probability of confusion is a question of law to be reviewed de novo. You ask us to send this back so that you can amend the application and limit it to sales on the sorority website, right? Suppose we reject that and reject your argument for reversing the board. My question is, can't you just file a new application that's limited to the sorority context? We certainly could, and our primary argument is not that amending the recitation of goods would resolve the problem. Our primary argument is there's no probability of confusion here, that we don't need to go through all those gymnastics and to amend the recitation and to start all over again. Our contention is this application should have been accepted from the get-go. Let's look at the third-party evidence the PTO relied upon. As this Court said in Hewlett-Packard at pages 1267 to 68, quote, whether a single company sells the goods and services of both parties, if presented, is relevant to a relatedness analysis, end quote. But it's not conclusive. It's just a consideration. And this circuit has kept that consideration with inadequate guardrails. The cases where you've held the third-party uses evidence was adequate. Take Hewlett-Packard, for instance. The goods and services there were data processing services on the one hand and data processing products on the other hand. I don't even think you had to go to the third-party uses evidence to hold that those were adequately related. The test is not simply related. They have to be adequately related, sufficiently related. Adequately related and sufficiently related to create a probability of confusion, not a mere possibility of confusion. Another case where this Court held the third-party evidence was adequate in Ray Detroit Athletic, but the goods and services, of course. I don't think you had to go to third-party evidence to say those are adequately related. The curious ones are the ones where this Court held they weren't adequately related. In Coors, you held at page 1341, quote, board aired by finding that beer and restaurant services are related, regardless of the fact that countless restaurants serve beer. This is the third-party evidence rule is not something that's to be loosely applied and converted into a per se determination that there's relatedness. The test is adequate relatedness or sufficiently related to create a probability of confusion. A possibility is not enough. In St. Helena, you held, this Court at page 752 held that the goods and services were not, quote, related enough to cause confusion about the source of origin. Later on in the same case, same page, this Court said when the relatedness of the goods and services is obscure or less evident, the PTO will need to show something more. This isn't a broad rule. You don't just show relatedness. That's the end all, do all, be all. There must be a probability of confusion. The PTO still has the burden of showing there's a likelihood, a probable likelihood of confusion. The PTO is going nuts in this arena. They have converted that into a per se rule. I hate to overburden the Court with a supplemental citation of authorities, but since our briefs were filed in this case, here are some of the things the PTO has held to be or adequately related. NRAAVR, cups and mugs, pastry, sandwiches, coffee beans, ground coffee beans, adequately related to tote bags and shirts. NRAA, C&D, brewing. The PTO held that Otto's, the Mark was Otto's, for soda pop. Did you file a 28J letter with respect to that? Yes, I did, Your Honor, and provided all the opinions. NRAA, C&D, brewing. Otto's, soda pops, the Mark was Otto's, the goods was soda pops. They held that was likely to be confused with Otto's oatmeal stout for beer. How many breweries also produce and sell soda pops? The PTO has turned this into a per se rule. NRAA, Pizza Inn, held that pizza is related to bakery goods. I don't know any bakeries that bake and sell pizzas. NRAA, Delete, D-I-L-E-E-P, they held that candles are adequately related to skin care products. They're going nuts with cosmetics. NRAA, Salvation Nutraceuticals, held that gummy vitamins, little rubbery candy vitamins, adequately related to hair shampoo and hair conditioner, soaps, things of that sort. NRAA, Suarez, S-U-A-R-E-Z, held that household cleaners are adequately related to body care products and cosmetics. And Coors, let's go back to Coors. Remember the quote from Coors where this court held at page 1341, board erred by finding that beer in restaurants services are related regardless of the fact that countless restaurants serve beer. Since our briefs have been filed in this case, NRAA, Caymus Vineyards, they held that wine is related to restaurant and bar services. NRAA, Veneto, V-I-N-E-D-O, held that wine is adequately related to restaurant and bar services. Totally ignoring, you know, giving lip service to Coors but ignoring what you said in Coors that yes, restaurants serve drinks, restaurants have bars, but that doesn't create a probability that consumers are going to think an alcoholic beverage with the same name is likely to be confused with the restaurant with the same name. The PTO has turned the third party uses rule into a per se rule, ignoring the guardrails this court set up saying no, you need an adequate sufficient relationship. Relationship alone is not enough. It needs to be an adequate or sufficient relationship. And that brings us to this case. If beer and restaurants are not adequately related, how do you make the leap into saying that jewelry and clothing is adequately related to common housewares? It's certainly not as closely related as restaurants and beer, restaurants serving beer. Another questioner, but you're saying that the board's wrong if there's no evidence, no substantial evidence in their legal construct. And actually, you're a point ahead of me. The next point I was going to make, the PTO has expanded this rule grossly out of proportion. In the past, it was traditionally held, you're big boxes. Grocery stores have a wide variety of goods. The fact that a grocery store might sell Kleenexes is not adequately related to justify finding a likelihood of confusion of someone selling Kleenexes. It's a wide variety. Consumers are not going to make that leap and probably be confused into believing they came from the same source. The cases that used to be followed said the same about department stores. When it's a wide variety of goods, consumers aren't going to make that mental leap into believing that a single item, simply because it's sold in a department store, is related enough to create confusion. And the same thing when you're dealing, more recently they said in the past, when you're dealing with online variety stores. Does it matter, sir, how the big box store or whatever presents the goods? Let's assume that at the University of Michigan, Michigan State game weekend, I think they get 125,000 people in the stand. And let's assume that the local big box store decides to have a presentation of fraternity sorority stuff, because they know they're all coming and they have in one room and they have the coffee mug with Zeta on it, they got the t-shirt with Zeta on it. But the difference there is it's specifically being marketed as a Michigan State item. Well, let's say it's not. Let's say, for example, that a particular store decides that they think they can promote further sales if they have a bunch of stuff that's got Zeta on it. They've got Zeta on t-shirts, they've got it on jewelry, they've got it on coffee mugs, and they all display it in the same room. Now, that's a harder case for you. But they don't have to say it. It's obviously being promoted and marketed as Zeta to Alpha merchandise, and that is the something more that would cause consumers to make that mental leap to assume that this store is a licensed vendor. Well, in that case, there is a potential likelihood of confusion as to source, right? When it's presented as the merchandise of the trademark owner, yes, I totally agree, Your Honor. But that's the something more. It is marketed as being the same thing. They might not say. Well, what I'm trying to get at is whether or not you're arguing that there ought to be some restrictions in this third-party situation for the kind of situation. So if things are, maybe they're not trying to promote it just to sorority people. I mean, a lot of people don't know what Zeta means. I mean, the members of the fraternity and sorority, maybe not many more people. And a good point there, Your Honor. I mean, the consumer for a product that says Zeta to Alpha. I think your basic problem is with the rule. When we talk about relatedness of goods, typically, we're simply looking at the relatedness of goods. And so we're going to ask whether or not this cup is somehow related to this piece of paper. And ordinarily, a human being would say no. But our law says that when things are sold and the consumer can see them together, we're going to have a new way of looking at relatedness, which is source, not the product itself. And the third-party uses rule makes sense in context. But the cases have already held that big boxes are bad examples for third-party uses. What about the registrations? Registrations? Which registration? The board relied on registrations that covered both kinds of goods. But it was, well, the registration did not mention any of our goods. No third-party registrations. The third-party, but even those were typically a wide variety of products. I mean, the PTO's Princeton Tectonics case addresses that point. It said if it's a variety store, a registration with a wide variety of products, consumers with it being a wide variety, consumers are more than likely to assume that, oh, it's just a reseller that's buying all these unrelated products and putting their trademark on it and not likely to confuse it with someone in an unrelated product line. That's in Princeton Tectonics, 95 USP 2nd, page 1509. I think we're out of time. Mr. Wheat, we're out of time. I think we'll give you two minutes for rebuttal. Okay. Bad me. Thank you, Your Honor, for giving me extra time. Ms. Heiber? May it please the Court. This is... Well, before we get into the merits, is it correct that if we affirm they can file a new application limited to the sorority context without being barred by collateral stop or res judicata? That is correct, Your Honor, because it's not the exact same application. If there's any difference in the goods, then we have to consider that anew. Okay. And I would also add to that... Well, it's not just difference in goods. It's difference in channels of trade. Yes. Yes. I'm sorry. In the identification of goods, right? That would kind of tell you differences in channels of trade or other things. It gets considered for the mark and the goods and the application it issued. I would also add to that Pellant has other options. If the Court were to affirm and they believe that the registered mark is a problem and they have priority or they find other problems with the mark, it is less than five years old and they could petition to cancel it. And if there's issues with the use claim, the new proceedings that the Trademark Monetization Act created are available to them as well. Going to the merits, this is an ordinary likelihood of confusion case. Likelihood of confusion considers a variety of factors. Here we have identical marks. When we have identical marks, a lesser degree of similarity between goods is required. And we're only... Can I ask a question about that lesser degree? That supposedly comes from Shell, right? Yes. It doesn't come from Shell at Harcourt. It comes from Shell at the PTAB, I believe. You don't have a copy of Shell with you, do you? I do not, Your Honor. No. I don't know if anybody's ever made this point, but it's page 1207 in Shell that's used for that citation. It says the service mark is not identical. It doesn't go on to say there's a lesser test. And I'm not suggesting that there is a lesser test. The test that we look for... So, let me back up. We're dealing with non-competitive goods, as Your Honor pointed out. These are not the same product. But that's what the DuPont test is designed to look at. What is the relationship between the goods? And the Court has held time and time again if the circumstances are such that consumers are going to encounter these goods offered by the same party under the same mark, that is evidence of relatedness. That is also evidence that in the limited circumstances where the something more principle applies satisfies that. It's the kind of evidence that the Court held was lacking in St. Helena. In that case, the services, the health care services, and the printed educational materials about fitness didn't have the same mark. Let's assume that it's a fraternity. It's the Deke House, where it's a masculine, very muscular group of guys that join the Deke House. And what they have is the mark that you're fighting up. You have a situation where they put the Deke on. Like here, they want for clothing and jewelry. And they're met with somebody that puts on tires. Somebody puts the Deke logo on an automobile tire. And the tires are being sold at Walmart right along with the other goods. Does the third party work in that situation? It would depend on what the evidence shows. The evidence just shows that, like the evidence just shows here. It doesn't show any more than the fact that at a point of sale, these goods with the same trademark on it exist. The consumer can walk up and see them. Then it would be the same. What we're looking for here is... So even if it was an automobile tire, I'm trying to get an example where the goods are so clearly unrelated in fact. But if the evidence shows that the same mark is put on these goods, and consumers encounter them in a way that they would think there's an affiliation or sponsorship... Then it's a per se rule, isn't it? It's not a per se rule, Your Honor. Because it depends on... It's all evidence-based. Here we have evidence... But suppose it's all sold in a single big box store, a Walmart. Is that enough? That alone is not enough. That's not what we have here. That's not enough, okay. Well, again, it depends, right? If they are marketed right next to each other in the same store... No, no, no. Just the fact that they're sold in the same store is not enough, right? Typically, that is not enough. Sometimes it is. The court's law holds that the same party sells the goods of each party. That's probative of relatedness. But what's really probative is when it's under the same mark. You seem to be saying two different things. Well, no, I'm not, Your Honor. What I'm saying is if they're sold in the same place, consumers might encounter these goods together in a way that if they see the same mark on them, they could be confused about who's sponsoring... Who's the source? Who's behind these goods? That's one thing. But it's another, and it's... Again, this is the kind of situation that is really textbook for relatedness. You don't only have them being sold together in the same store. They are sold together under the same mark. That's the kind of evidence that tells us consumers... No, no, no. But of course, that's the... Wait, wait. That's the assumption here. My question is same mark, different goods. The mere fact that the goods are sold in the same store is enough to make them related. It can be when they're sold under the same mark. Why? Why is that enough? Because consumers encounter them in circumstances where I see my ZTA shirt and I see my ZTA mug. I wonder if they're connected, if they're both made by the same person. You're looking at the facts of this case. But what about, you know, are there examples? Can you think of an example where it is sold in the same Walmart, and yet there isn't likelihood or the goods are not related? Like, I think the example was tires versus mugs or T-shirts. Would that be enough? Can you envision an example, or is it always the case that if it's sold in the same store, that that's going to be enough to satisfy the TTAB's requirement? I do not think that it is always the case. But if you have enough examples that this is a common practice, then that's going to inform what consumers encounter in the marketplace and think. I mean, big box stores sell lots of different kinds of goods. Websites sell lots of different kinds of goods. If that's enough, that would begin to look like a per se rule. It is not a per se rule, Your Honor, and the tire example is one that is likely far afield. I cannot think of evidence where this would be the case. But in today's, you know, licensing… So you're giving an example of an automobile tire and a diamond ring. Right. The mere fact that they're sold in the same store is… What's happening here is that we're not asking whether or not the goods themselves are actually factually related. We're asking whether or not there could be some confusion in the mind of the consumer as to the source of unrelated goods. That's exactly right. That's exactly right. And so what the law says is that if a consumer can be confused about the source of utterly unrelated goods, that qualifies under the DuPont factor for relatedness of the goods. Yes, but it depends on how the… Does that strike you that maybe that standard has something wrong with it? No, it does not because it's… I know it's been applied forever. Well, I think we're talking about two different things here, okay? We're not in a big-box store context at all in this case. We're in a case… We don't know what kind of context we're in from the point of sale, do we? Did the record show where the points of sale that are compared here are? No, they're presumed to be in all normal channels of trade to all customers. But the point that we're looking at for are these goods related in the minds of consumers in the sense that matters for likelihood of confusion? Could they believe mistakenly that they emanate from a common source? The best example on the record is the PIE-5 site, right? That's a good example for the particular goods. The PIE-5 site is a sorority and it has its own site, and it sells totally physically unrelated goods with its brand on them, right? Yes, but that's exactly the point. Consumers are accustomed to seeing, and in this case the evidence does show, offering the goods of both the applicant and the registrant under the same mark in the same store. And it's the under the same mark that is really critical in this case and in other cases where the court has a felony. We put our court logo on coffee mugs and we put it on T-shirts. It's the same idea. Yes, Your Honor, and the court integrally recognized that it is very common practice today for companies that are providing very different things to license their good marks on collateral merchandise. That case involved financial services and why— Well, that may be true, but that doesn't mean that's always true. It doesn't, Your Honor, which is why it's completely evidence dependent. So give us an example when it's not true. Same mark, different goods, sold in the same store or at the same website. What evidence would suggest that they're not related under those circumstances in your view? I think you would need some kind of rebuttal evidence that would show consumers wouldn't make that mistake of thinking when they encounter— A survey? A survey, possibly. Declarations, other things of that nature. Have you thought of examples like the diamond ring and tires that are so far afield that evidence wouldn't be required? I don't think we could find evidence of relatedness of those goods. My friend on the other side— Well, I think what Jeff Stahl is asking is whether or not there should be a requirement that where the goods are practically wildly different, there has to be some showing. Yes, and there is, and it would be— Consumer would be confused as to source. It would be the same exact showing that this court has required time, and again, evidence that the same parties offered— Who would it be to produce that? You want to invoke what looks like a per se rule, right? Your Honor, there's no per se rule here. It's 100% based on the evidence of how consumers encounter goods in the marketplace. When they encounter them offered by the same provider, in the same store, under the same mark, the goods under the same mark. We're not talking about Walmart that sells various— I'm really confused right now. What I want to make sure I understand is what you're saying is that in the example of a tire and a diamond ring, the trademark registrant for the diamond ring would have to present evidence that there wouldn't be confusion because their diamond rings are sold in the same store as a tire. No, Your Honor. It's the opposite. The PTO would have to present evidence that this is a common thing that consumers would encounter. Diamond rings and tires offered under the same mark. Not just in the same store. Offered under the same mark. That's really what's getting to the heart of why this evidence shows relatedness. Do the goods commonly emanate from a single source under the same mark? That is, time and again, the evidence the Court has upheld is sufficient to show relatedness. An applicant had options to— That individual sellers are offering the two goods, the tires and the diamond rings, under the same mark. Correct. If we had multiple examples of that, then that might be enough for a pre-professional case. And you're saying that that's true here because other sororities are selling diverse goods? Is that the idea? Not just other sororities, but just generally because these are not limited. That are these the kinds of goods that consumers encounter under the same mark, sold together? And they are. But it's not enough that they're sold in the same store or the same website, right? That in and of itself is not enough. If it's under the same mark, the goods are branded and the website has the same name. It is enough if they're the same mark that they're sold in the same website or in the same store to show relatedness? It is, Your Honor. The Court recently upheld that in Charger Ventures because the record shows that companies are known to offer both residential and commercial services under the same mark and often on the same website. We find that substantial evidence supports the Court's finding. That's not the same thing. That's not the same thing. My question was the mere fact that they're sold on the same website or sold by a third-party website or a third-party big box store doesn't make them related. There's not sufficient evidence of relatedness. I think we might be talking past each other. Maybe an example is helpful from the case that Appellant cited, the Princeton Tectonics case. In that case, Appellant has plucked a quote out of context, but the website that the Board found did not show relatedness was stars.com. The Board described it as virtually any product or service a consumer may desire was available on that website, and it did not show that the goods at issue there were personal headlamps and electric lighting fixtures were sold in the same section of the site by the same provider under the same mark. That is not enough. So, yes, Your Honor, that is not enough. But if it's the same mark, like if the website like Kate Spade, okay, it's the katespade.com website, and the goods are also branded Kate Spade, that is enough. We're not talking about the Kate Spade website. We're talking about a third-party website. The questions that we've been asking are about third-party websites, third-party stores. The mere fact that goods are sold under identical mark, tires, and diamond rings in that context is not sufficient to show relatedness, right, or not? I think I'm resisting only because I'm not sure if we're assuming that the website, the store, has a different brand name than the goods. We are, like Amazon, for example. Okay, right. Yes, Alibaba, Amazon, those are like the big-box stores, okay? They sell a variety of things by different providers under different marks. What I'm talking about is the evidence of the record here. So under those circumstances, the fact that the goods are sold on the same third-party website or Walmart is not sufficient to establish relatedness? If it's a big-box store like that, yes. But if it's a small, focused retail channel, like if it's a houseware store, I would say that's, for example, if it's Pottery Barn, okay, that is enough where it's a houseware store that sells. Why is there a difference in the mind of the consumer? Some people don't ever go to the small retail store anymore. They do all their business online on the big places. And so when I'm shopping on the big place and I see the Zeta mark on a diamond ring and I see it on a tire, why is my reaction different than if I were in a smaller store and I encountered the same thing? I don't know if it would be, Your Honor. Well, you've said there is now in your response to Judge Dyke. A hundred percent depends on what the evidence shows and the commonality of it. But I do submit that Amazon generally, you have two different goods sold on there. That's not enough to show they're related in the minds of consumers because consumers go to Amazon, different brand, expecting to find all sorts of goods from all different parties. They go to Phi Beta Alpha's store to find things from Phi Beta Alpha, and they offer jewelry, clothing, mugs. So they go to a local department store, right? And the local department store is, you know, what Amazon used to be, like the old Hex company or whatever here in town. Right. Department store. Well, your rule that it won't work on Amazon website, does that apply to the local department store? That's been the law, that department stores sell a lot of things. So the mere fact that two things are sold in a department store is normally not going to be enough. It, again, would depend if they're sold under the same mark, in circumstances that consumers would encounter them in a way that they could mistakenly believe they come from the same source. That's what the standard is. That's what the evidence needs to show. And the evidence we have here amply shows these are related. These are goods that are of a type that commonly emanate from the same source. And that's what the board found. That's what the evidence shows. It's what the court has directed time and time again as sufficient to show relatedness of goods. We do not have evidence of department stores, big box stores. That's not what the evidence in this case is. This is targeted retailers under a single brand selling their own branded goods and goods of both parties. How does an applicant protect him or herself when they file their application? Do they carve out Amazon and say, we apply to basically all forms of commerce, channels of commerce, except Amazon? But this isn't an Amazon case, Your Honor. I'm asking you, how does the applicant protect themselves? How, because you're saying that a local department store, the fact that they're sold together with the same mark is not enough? No, Your Honor, I'm not saying that. We have to look at the circumstances in every case normally. Just that mere fact that it's a department store that sells both kinds of goods, that's not enough to show relatedness. But if it's the same marks and they're presented near each other in the store, you might very well be walking by, similar to your example of the bookstore, except a bookstore is different than a department store. But if you would think, oh, I wonder if that's made by the same company that makes the shirts I just saw over here, and it's a football or something. It's about what the common practice is, the marketing circumstances. And if there's evidence that this is a common thing, that these things are sold under the same mark, in circumstances that consumers could be confused as to their source, that's what the evidence needs to show. Mere fact of department stores, mere fact online on Amazon, not enough in and of itself. I hope that kind of draws the line. Okay. Okay. I think we're out of time. Okay. Thank you. Thank you. Mr. Wheat, you have two minutes. May it please the court. Judge Clevenger, the answer to your question, when the goods are widely different as provided by this court in the St. Helena case, at page 754, in situations like the present in which the relatedness of the goods and services is obscure or less evident, the PTO will need to show something more than the mere fact that the goods and services are used together. Later in that paragraph, the rule is not so limited and has application whenever, while we have applied to something more standard in the past in the context of restaurant services, the rule is not so limited and has application whenever the relatedness of the goods and services is not evident, well-known, or generally recognized. What case is that? The St. Helena case, 774F3rd. I was reading from the end of page 753 and end of page 754. The wide variety rule from Princeton Technonics, 95 USPQ at page 1511. In addition to goods concerned, the registration also identifies automatic bread-making machines, rice cookers, various types of cooking ovens, ventilation systems, and air conditioners. The diversity of the goods identified in the registration diminishes the probative value in establishing that any two items identified in the registration are related. We conclude the diversity of goods identified... Is that case dealing with actual relatedness or is it dealing with... No, it's a third-party uses case where the example was an online store with a wide variety of products. We conclude that the diversity of goods identified in the registration of record is sufficient to establish that Panasonic is a housemark or the equivalent used on a wide variety of goods which are otherwise unrelated. That's most of the examples here. Sorority stores, souvenir shops, college bookstores, the tourist attraction, the college didn't produce any of these products. They buy them and put their housemark on them. But that doesn't mean the products... I think we're out of time. Okay. Thank you. I appreciate the extra time, Your Honor. Thank you. Thank you for the case's submission.